UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: 09/09/2020           │
└─────────────────────────────────┘
```

SELWYN DAYS,

                         Plaintiff,

        -against-                                        18-CV-11538 (NSR)

EASTCHESTER POLICE DEPARTMENT, TOWN            OPINION & ORDER
OF EASTCHESTER, COUNTY OF
WESTCHESTER, MARIO ASTARITA, GEORGE
BARLETTA, MATTHEW KIERNAN, AND
CHRISTOPHER CALABRESE,

                         Defendants.

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Selwyn Days ("Plaintiff" or "Days") commenced this action pursuant to 42

U.S.C. § 1983 against the Eastchester Police Department, Town of Eastchester, Mario Astarita,

George Barletta, and Matthew Kiernan (together, the "Eastchester Defendants"), the County of

Westchester, and Christopher Calabrese (together, the "Westchester Defendants") (collectively,

the "Defendants") on December 11, 2018.  (*See* Complaint, ECF No. 1.)  In this action, Plaintiff

seeks redress for alleged civil rights violations stemming from his 2004 and 2011 convictions for

two counts of murder.  (*See* First Amended Complaint ("FAC") ECF No. 52.)  Plaintiff was

acquitted by a jury after his fifth trial in 2017.  Plaintiff served 16 years and 7 months in jail

before he was released.  Plaintiff alleges the violation of his constitutional rights under the

Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under

state law.

        Before the Court is the Westchester Defendants' Motion to Dismiss the First Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 65), and the

Eastchester Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 103.)  For the following reasons, the Westchester Defendants' motion is GRANTED in part and DENIED in part, and the Eastchester Defendants' motion is DENIED.

## BACKGROUND

### I.    Factual Allegations

The following facts are derived from the Amended Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

A court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6).  *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

### a.    The 1996 Eastchester Murders

On November 21, 1996, Archie Harris ("Harris") and Betty Ramcharan ("Ramcharan") were found murdered in Harris' home in Eastchester, New York (the "Eastchester murders"). (FAC ¶ 42.)  Officers and detectives from the Eastchester Police Department, the Westchester Police Department, and the Westchester Department of Laboratories and Research ("WDLR")

arrived at the crime scene and collected evidence.  (*Id.* ¶ 43.)  The investigation did not lead to

any arrests and the case went cold for five years.  (*Id.* ¶ 59.)

### b.  Plaintiff's Alibi

Plaintiff alleges that at the time of the Eastchester murders, he was living in Goldsboro,

North Carolina, with his mother, Stella Days.  (*Id.* ¶¶ 51–52.)  His alibi witnesses include

Remona McIver, a former Magistrate Judge in North Carolina; Captain Perry Sharp, a retired

homicide detective with the Goldsboro Police Department; Donald Evans, a local restauranteur

in Goldsboro; Melody Webb, a teller at a post office in Goldsboro; and Cindy Artis, Plaintiff's

girlfriend at the time. (*Id.* ¶ 53.)  All of these witnesses remember Plaintiff being in North

Carolina when the Eastchester murders occurred.  (*Id.* ¶¶ 54–58.)  Moreover, none of the

extensive forensic evidence recovered from the house matches Plaintiff; indeed, the most

significant forensic evidence excludes him.  (*Id.* ¶¶ 46–50.)

### c.  Plaintiff's Arrest and the Involvement of Cherilyn Mayhew

Nearly five years after the Eastchester murders, on February 15, 2001, at approximately

11:00 am, Plaintiff was arrested in Mount Vernon, New York on an unrelated charge.  (*Id.* ¶ 61.)

An ex-girlfriend, Cherlyn Mayhew ("Mayhew"), and her new boyfriend, Darnell Getter

("Getter"), reported that Plaintiff had violated an order of protection and threatened Mayhew.

(*Id.* ¶ 61.)  Plaintiff was then brought to the Mount Vernon Police Department ("MVPD").  (*Id.*)

While Plaintiff was in custody, Mayhew called the police again, this time anonymously,

and blamed Plaintiff for two Eastchester murders without providing further detail.  (*Id.* ¶ 62.)

The Mount Vernon police officer who fielded the call knew of only two unsolved murders in that

town: those of Harris and Ramcharan. (*Id.*)  The officer contacted the Eastchester Police

Department around 3:00 p.m., and two of the primary detectives who worked on the Harris and

Ramcharan murders—Lieutenant Mario Astarita ("Astarita") and Sergeant Matthew Kiernan ("Kiernan")—arrived at Mount Vernon to interrogate Days. (*Id.*) They were eventually joined by a third detective who had worked the case—Detective George Barletta ("Det. Barletta")—shortly after midnight, while the interrogation was taking place. (*Id.*)

At the request of Detective Christopher Calabrese of the Westchester Police Department ("Calabrese"), Astarita, Kiernan, and local Mount Vernon police delayed processing of Plaintiff for court as Astarita and Kiernan began to interrogate him about the murders—and while Calabrese tracked down the anonymous caller. (*Id.* ¶ 64.) Because Mayhew had placed the other report about Days, she was identified as a possible caller. (*Id.*) Calabrese confronted Mayhew near her residence and demanded that she come to the police station to submit to an interview. (*Id.* ¶ 65.) Calabrese treated Mayhew as if she did something wrong and may be in trouble and that she was obligated to go to the precinct. (*Id.* ¶ 65.)

Once at the MVPD, Calabrese separated Mayhew from Getter and escorted Mayhew upstairs alone as Getter waited downstairs. (*Id.* ¶ 65.) Calabrese began to question Mayhew in an accusatorial way about her anonymous call, and he gave her the impression that if she did not stick by her story that Plaintiff did the Eastchester murders she would remain in custody and may be arrested. (*Id.* ¶ 65.) Mayhew was fearful of the police as a result of Calabrese's overbearing demeanor and the influence he exerted over her with the threat of arrest. (*Id.* ¶ 67.) This was a strategy deliberately employed by Calabrese to have her maintain and elaborate on her accusation that Plaintiff committed the Eastchester murders. (*Id.*) Rather than allowing her to leave, Calabrese and the other detectives ramped up the pressure on Mayhew by making it appear that she was not free to go and using the weight of the situation to intimidate her. (*Id.* ¶

68.)  Mayhew, under pressure, reiterated the false account made on the anonymous call.  (*Id.* ¶¶ 69–70.)

### d. Plaintiff's False Confession

Plaintiff's interrogation started around 5:00 p.m. on February 15, 2001. (*Id.* ¶ 72.)  No attorneys were present. (*Id.*)  Although he was 34-years-old at the time, Plaintiff had the IQ of a second grader (75), scored in the "borderline" range in a series of intelligence tests, with significantly below average intelligence, and he is highly suggestible and compliant. (*Id.* ¶ 73.) Plaintiff also had a history of psychological disorders (he had been hospitalized on more than one occasion and took antipsychotic medication).  (*Id.*)  Indeed, he was treated for mental illness around the time of his arrest, and after the interrogation he was prescribed antipsychotic medication by Correctional Health Services upon his admission (soon after the interrogation). (*Id.*)  Plaintiff also suffered from lupus, which caused brain damage, and for which he was also treated with medication. (*Id.*)

Plaintiff was questioned until approximately 10:30 p.m. (*Id.* ¶ 74.)  Between 5:00 p.m. and 10:30 p.m., the detectives, including Calabrese, deliberately decided not to record any part of this interrogation, despite the fact that the room was set up for audio and visual recording. (*Id.*) At about 10:30 p.m., Plaintiff was temporarily returned to his prison cell, and detectives Astarita and Kiernan joined Calabrese with Mayhew. (*Id.* ¶ 75.)  Around midnight, Plaintiff was retrieved by the detectives from his cell for further questioning. (*Id.* ¶ 76.)  Astarita and Kiernan, later joined by Barletta, continued to question and threaten Days—including telling him he would get the death penalty and threatening physical harm to Plaintiff and his family if he did not confess—while Calabrese watched through a monitor.  (*Id.* ¶ 76, 79–80.)  Although Calabrese was right next to the recording equipment, he failed to record the interrogation for nearly two

hours.  (*Id.* ¶ 82.)  During this time, the other detectives rehearsed the confession with Plaintiff

and fed him information about the crime and the crime scene that he knew nothing about.  (*Id.* ¶¶

79–81.)

At 1:42 a.m. on February 16, 2001, after Plaintiff had endured approximately six and a

half hours of questioning and sixteen hours of custody, Calabrese commenced videotaping. (*Id.* ¶

82.)  In the video, Plaintiff tells Astarita, Kiernan and Barletta that he was responsible for the

murders, including some details that fit the crime scene evidence. (*Id.*)  Plaintiff recanted his

confession shortly afterward.  (*Id.* ¶ 83.)

### e.  The Prosecution's Reliance on the False Confession

All the detectives, including Calabrese, were interviewed by prosecutors about Plaintiff's

confession before indictment and throughout the prosecution.  (*Id.* ¶ 84.)  Calabrese, Astarita,

Kiernan, and Barletta all omitted that Plaintiff had been threatened with the death penalty and fed

facts about the crime scene, and that he and his family were threatened with physical harm if he

did not confess.  (*Id.* ¶ 85.)  They also did not disclose that they could have videotaped the entire

interrogation, and gave a false story about why they were unable to videotape earlier.  (*Id.*) These

omissions regarding the interrogation were also left out of their statements in various police

reports.  (*Id.* ¶ 86.)  The prosecution used the evidence of Mayhew's statements and Plaintiff's

confession to secure a grand jury indictment and ultimately, Days' conviction. (*Id.* ¶¶ 87–88.)

### f.  Procedural History

On April 25, 2001, Plaintiff was indicted and charged with two counts of murder in the

second degree.  He was tried in 2003, and that trial ended in a hung jury.  (*Id.* ¶ 33.)  In 2004,

Plaintiff was retried; in this second trial, he was convicted and sentenced to two consecutive

terms of 25 to life.  (*Id.* ¶ 34.)  In 2006, the Appellate Division, Second Department, affirmed the

convictions.  *See People v. Days*, 31 A.D.3d 574 (2d Dep't 2006).  (*Id.* ¶ 35.)  In 2007, Plaintiff

moved to vacate his convictions pursuant to C.P.L. § 440.10.  (*Id.* ¶ 36.)  In December 2009,

Plaintiff's convictions were vacated and a new trial was ordered.  *See People v. Days*, 906

N.Y.S.2d 782, 2009 WL 5191433 (Westchester Cnty. Ct., Dec. 31, 2009).  (*Id.*  ¶ 37.)  The court

found that the prior judgment was obtained in violation of Plaintiff's rights to due process and

the effective assistance of counsel.  (*Id.* ¶ 37).

In 2011, Plaintiff was retried two more times: the third trial ended in a mistrial, and the

fourth ended in a conviction.  (*Id.* ¶ 38.)  The 2011 conviction was subsequently reversed—in

part due to the trial court's failure to permit testimony from a false confession expert—and a new

trial was ordered in 2015.  *See People v. Days,* 131 A.D.3d 972 (2d Dep't 2015).  (*Id.* ¶ 39.)

In 2017, the case was retried for a fifth time.  On September 12, 2017, Plaintiff was

acquitted and he was released from jail.  (*Id.* ¶ 40.)  Plaintiff served 16 years and 7 months in

jail; 10 years and 5 months of that time were spent in New York State custody.  (*Id.* ¶ 41.)

## II.   LEGAL STANDARD

### a.   12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible."  *Twombly*,

550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts which allow the court to

draw a reasonable inference the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the

sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal

conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir.

2013).  While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678–79.

### b.  42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

Plaintiff alleges eight causes of action, including: (1) violations of the right to a fair trial and due process under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  (FAC ¶¶ 133–147); (2) violations of the rights against self-incrimination under the Fifth and Fourteenth Amendments (*id.* ¶¶ 148–153); (3) malicious prosecution and deprivation of liberty under the Fourth and Fourteenth Amendments (*id.* ¶¶ 159–174); (4) pre-trial detention without probable cause in violation of the Fourth Amendment (*id.* ¶¶ 175–181); (5) spoliation of

evidence in violation of the Fifth and Fourteenth Amendments (*id.* ¶¶ 182–191); (6) *Monell* claim against the Town of Eastchester for the actions of the Eastchester Police Department (*id.* ¶¶ 192–214); (7) malicious prosecution under New York state law (*id.* ¶¶ 215–223); (8) negligent hiring, training, supervision, retention, and discipline under New York state law (*id.* ¶¶ 224– 227); (9) violations of the New York State Constitution (*id.* ¶¶ 228–230).

The Westchester Defendants move to dismiss Plaintiff's § 1983 claims on the basis that they fail to state a claim upon which relief can be granted, and that Defendant Calabrese is protected by the doctrine of qualified immunity. (*See* Amended Memorandum of Law in Support of County Defendants' Motion to Dismiss ("Westchester Defs. Mem."), ECF No. 66.) Further, all Defendants move to dismiss several of Plaintiff's § 1983 claims as barred by the statute of limitations. (*See* Westchester Defendants' Supplemental Memorandum of Law ("Westchester Defs. Supp. Mem."), ECF No. 81); Eastchester Defendants' Memorandum of Law in Support of Motion to Dismiss ("Eastchester Defs. Mem."), ECF No. 106.).

For the reasons stated below, the Court denies the motions on the statute of limitations grounds. The Court grants the Westchester Defendants' motion to dismiss as to the §1983 claim against the County of Westchester, but denies the motion as to all other claims.

## I.   Statute of Limitations for § 1983 Claims

Since Congress has not established a federal statute of limitations for § 1983 suits, courts apply the most appropriate statute of limitations from applicable state law. *Singleton v. New York*, 632 F.2d 185, 189 (2d Cir. 1980). In New York, § 1983 claims are subject to a three-year statute of limitations. *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). While state law determines the statute of limitations for §1983 actions, "federal law determines when a claim accrues" and the statute begins to run." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019); *see*

*also Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (internal quotation mark omitted). Under federal law, the time of accrual is presumptively "when the plaintiff has 'a complete and present cause of action.'" *McDonough v. Smith*, 139 S. Ct. at 2155 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

But, as the Supreme Court recently clarified in *McDonough*, "[w]here . . . a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *McDonough*, 139 S. Ct. at 2155. First, courts must identify "'the specific constitutional right' alleged to have been infringed." *Id.* Next, courts may "refer[] to common-law principles governing analogous torts." *Id.* at 2156. Finally, in keeping with precedent such as *Heck v. Humphrey*, 512 U.S. 477 (1994),[1] courts may also consider practical problems of "two-track litigation," including the "core principles of federalism, comity, consistency, and judicial economy." *Id.* at 2158.

The Supreme Court, analogizing a fabricated-evidence challenge to the common-law tort of malicious prosecution, held that "[t]here is not 'a complete and present cause of action,' to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *Id.* at 2158. The Supreme Court concluded that "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings . . . have terminated in [the § 1983 plaintiff's] favor." *Id.* at 2154–55. The Court considers each claim challenged by Defendants in light of this precedent.

---

[1] In *Heck*, the Supreme Court considered whether a state prisoner who sought monetary damages arising from an alleged unconstitutional conviction could pursue a claim under § 1983. *Id.* at 486–87. The Supreme Court determined that "in order to recover damages for an alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a court's issuance of a writ of habeas corpus." *Id.* at 486–87. The rule articulated in *Heck* therefore precludes the use of § 1983 to seek damages if a judgment in favor of the plaintiff "would necessarily imply the invalidity" of a prior state or federal criminal conviction or sentence. *Id.*

### a. Denial of Fair Trial and Due Process (Count One)

Plaintiff brings claims under the Due Process Clauses in the Fifth and Fourteenth Amendments, alleging that Defendants coerced his confession and then knowingly forwarded false statements to prosecutors in violation of Plaintiff's right to a fair trial. (FAC ¶¶ 64–71, ¶¶ 133–47.) As explained in *McDonough*, civil claims "challeng[ing] the integrity of criminal prosecutions undertaken pursuant to legal process" generally do not accrue until "favorable termination of [the criminal] prosecution." *McDonough*, 139 S. Ct. at 2154–55; *see also Rosario v. City of New York*, No. 18 CIV. 4023 (LGS), 2019 WL 4450685, at *6 (S.D.N.Y. Sept. 16, 2019).[2] Here, Plaintiff alleges the murder charges against him were founded upon fabricated evidence—both false information and the omission of the truth. Plaintiff's denial of fair trial and due process claims therefore do not accrue until the conclusion of Plaintiff's fifth trial, when he was acquitted, on September 12, 2017. *See Hincapie v. City of New York*, 434 F. Supp. 3d 61, 71 (S.D.N.Y. 2020) ("The statute of limitations for a fabricated-evidence claim does not begin to run until the criminal proceedings against the defendant have terminated in his favor."); *Miller v. Terrillion*, 436 F. Supp. 3d 598, 603–04 (E.D.N.Y. 2020) (holding fabricated-evidence allegation "falls within *McDonough*'s holding, and, consequently, [plaintiff's] fair trial claim has not accrued unless and until his criminal proceedings terminated in his favor.") Plaintiff's December 11, 2018 complaint is therefore timely as to these claims.

---

[2] Defendants cite other cases involving criminal prosecutions, but these cases were decided prior to, and have been implicitly overturned by, *McDonough*. *See Jefferson v. Kelly*, No. 06-CV-6616 NGG LB, 2008 WL 1840767, at *3 (E.D.N.Y. Apr. 22, 2008) ("[A] due process claim based on a coerced confession would logically accrue on the day the confession was allegedly coerced."); *Chisolm v. City of New York*, No. 17-CV-5327 (MKB), 2018 WL 3336451, at *4 (E.D.N.Y. July 6, 2018) ("Fabrication of evidence claims accrue when the plaintiff learns that evidence was allegedly fabricated and an injury was caused by the fabrication."). Furthermore, *Bailey v. City of New York* is distinguishable because instead of having a retrial, the § 1983 plaintiff's conviction was overturned and the criminal case was dismissed at the same time. 79 F. Supp. 3d 424, 438 (E.D.N.Y. 2015); *see also Thomas v. Mason*, No. 1:17-CV-626 (DJS), 2019 WL 6111572, at *3 (N.D.N.Y. Nov. 18, 2019) ("Under *McDonough* the Court concludes that Plaintiff's fabricated-evidence claim accrued upon his ultimate acquittal, not the reversal of his initial conviction.").

### b.  Violation of Right Against Self-Incrimination (Count Two)

Plaintiff's second count states a claim for his coercive interrogation, which resulted in a false confession that was used against him at trial in violation of his right under the Fifth and Fourteenth Amendments to be free from compulsory self-incrimination.  (FAC ¶¶ 148–153.)  As with Count One, the claims raise in Count Two are those that "challenge the integrity of criminal prosecutions undertaken pursuant to legal process."  *McDonough*, 139 S. Ct. at 2156; *see also Santana v. Denton*, No. 20-CV-04352 (LLS), 2020 WL 4505733, at *4 (S.D.N.Y. July 30, 2020) (coerced confession allegation "would call into question the validity of [plaintiff's] conviction because '[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.'").  Similarly, this is "a type of claim that accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor."  *McDonough*, 139 S. Ct. at 2156; *see Brown v. City of Chicago*, No. 18 C 7064, 2019 WL 4694685, at *5 (N.D. Ill. Sept. 26, 2019) (extending *McDonough*'s reasoning to self-incrimination claim and concluding the "[p]laintiff should not be expected to have brought this claim . . . while awaiting retrial.").  Accordingly, Plaintiff's coerced confession claims do not accrue until September 12, 2017, and Plaintiff's December 11, 2018 complaint is also timely as to these claims.

### c.  Malicious Prosecution and Deprivation of Liberty (Count Three)

Third, Plaintiff alleges claims for malicious prosecution and deprivation of liberty under the Fourth and Fourteenth Amendments of the U.S. Constitution.  (FAC ¶¶ 159–174.)  The *McDonough* opinion squarely addressed malicious prosecution claims, 139 S. Ct. at 2154–55, and it is well-settled in this Circuit that "for claims based in malicious prosecution, [the accrual] period starts to run only when the underlying criminal action is conclusively terminated."

*Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).  Plaintiff's malicious prosecution claims are therefore timely as well.

### d.  Detention Without Probable Cause (Count Four)

Fourth, Plaintiff alleges claims for pre-trial detention without probable cause in violation of the Fourth Amendment of the U.S. Constitution, and pursuant to *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 921 (2017).  (FAC ¶¶ 175–181.)  In *Manuel*, the Supreme Court held that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process."[3]  *Manuel*, 137 S. Ct. at 920 (2017).  The Supreme Court left the issue of timeliness to the Courts of Appeals, and recognized that in the Second Circuit, such claims "have incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case."  *Id.* at 921 (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 114–118 (2d Cir. 1995)).  As such, Plaintiff's *Manuel* claims are timely as well.

## II.   Sufficiency of the Amended Complaint

Plaintiff brings four claims under 42 U.S.C. § 1983 against Defendant Calabrese, as well as a *Monell* claim against Defendant the County of Westchester ("Westchester County").  (FAC ¶¶ 133–181, 214.)  The Westchester Defendants contest the sufficiently of the pleadings as to each claim.  For the reasons stated below, the Court finds each claim against Defendant Calabrese to be adequately pleaded, but dismisses the claim against Westchester County.

---

[3] The Eastchester Defendants' reliance upon *Kaley v. United States* is misplaced.  571 U.S. 320, 328 (2014) ("[A]n indictment fair upon its face and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offence alleged.").  The Supreme Court in *Manuel* directly rebutted this position, noting that a Fourth Amendment violation "can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements."  *Manuel*, 137 S. Ct. at 918.  The same holds when a grand jury indictment is "tainted—as here, by fabricated evidence—and the result is that probable cause is lacking."  *Id.* at 920 n.8.  "Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim."  *Id.* at 918–19.

### a. Violation of Right Against Self-Incrimination (Count Two)

The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1 (1964), provides in part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  It guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94 (1964).  Specifically, "[i]n the period between the commencement and the culmination of a criminal case, the Fifth Amendment guards against governmental use of a coerced statement that inflicts a penalty on the suspect. . . . [The] use or derivative use of a compelled statement at *any* criminal proceeding against the declarant violates that person's Fifth Amendment rights." *Weaver v. Brenner*, 40 F.3d 527, 535 (2d Cir. 1994) (emphasis in original).

A plaintiff alleging coercion must allege more than that police told him he was a suspect, suggested that it would be to his benefit to cooperate, or promised leniency in exchange for cooperation.  *See United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995).  A plaintiff must point to circumstances indicating that he could not make a knowing and voluntary decision.  *See United States v. Taylor*, 745 F.3d 15, 24 (2d Cir. 2014).

The Westchester Defendants argue that the Amended Complaint does not contain factual allegations sufficient to establish a conspiracy involving the Westchester Defendants or a violation of Plaintiff's right against self-incrimination.  Plaintiff argues that Calabrese's role in the interrogation—to watch a monitor and operate the video camera (FAC ¶ 76)—suffices to establish Calabrese's liability for failing to protect Plaintiff from the other detectives.  (*See also id.* ¶¶ 148–153.)  Plaintiff alleges that Calabrese used his role as the video recorder to suppress

exculpatory evidence and to strategically capture parts of the confession that were in context misleading and prejudicial to Plaintiff.  (*Id.* ¶¶ 76–81, 154.)

The Westchester Defendants point out that Calabrese "was in an adjacent room" during the interrogation, and that this is not enough to establish Calabrese's participation in any conspiracy or unconstitutional activity.  (*Id.* ¶ 76.)  Yet, assuming at this stage that Plaintiff's confession was coerced, the allegation that Calabrese observed the coercion—even from a live video feed—is sufficient.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases).  Accordingly, the Court finds this claim sufficiently pleaded as to Defendant Calabrese.

### b.  Malicious Prosecution and the Right to a Fair Trial (Counts One and Three)

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted).  In order to establish a malicious prosecution claim, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff [by the defendant]; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted).

First, Plaintiff alleges that Calabrese initiated the prosecution by working with the other officers, assisting them in creating a false narrative about the investigation and confession, and

misleading prosecutors about the reliability of the evidence to support the case against Plaintiff.

The Westchester Defendants are correct that Plaintiff has not alleged that Calabrese himself

detained or arrested Plaintiff.  Nevertheless, "[g]iving information to the police that is known to

be false qualifies as the commencement of a prosecution." *Bornschein v. Herman*, 304 F. Supp.

3d 296, 302 (N.D.N.Y. 2018) (collecting cases); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124

F.3d 123, 130 (2d Cir. 1997) ("When[ever] a police officer creates false information likely to

influence a jury's decision and forwards that information to prosecutors, he violates the

accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

action is redressable in an action for damages."); *Garnett v. Undercover Officer C0039*, 838 F.3d

265, 276 (2d Cir. 2016) (same).  As such, Plaintiff has properly alleged that Calabrese

participated in the commencement of a prosecution.

     Defendants do not contest that the second element has been met—the criminal

proceedings ultimately terminated in Plaintiff's favor.  With regard to the third element, lack

probable cause, Plaintiff has alleged that the prosecution was based on a single hearsay

accusation, initially made anonymously by Mayhew, and falsely elaborated at the direction of

Defendants.  (FAC ¶¶ 62–71).  "The law in the circuit is . . . that uncorroborated allegations by

an eyewitness or victim do not necessarily establish probable cause.  On the contrary: Second

Circuit case law stresses the importance of investigation and corroboration." *Wu v. City of New

York*, 934 F. Supp. 581, 587 (S.D.N.Y. 1996) (collecting cases).  Plaintiff alleges that Mayhew

was unreliable, and that she was manipulated into making false statements against Plaintiff.

(FAC ¶¶ 66–71.)  Plaintiff further alleges that his confession was coerced, and that there was no

forensic evidence to independently corroborate Mayhew's accusation.  (*Id.* ¶¶ 42–58, 72–88.)

Although an "indictment by a grand jury creates a presumption of probable cause," this

presumption may be overcome if the indictment was tainted by false or fabricated evidence. *Manganiello*, 612 F.3d at 162.  At this stage, where the Court must accept Plaintiff's factual allegations as true, the Court finds the lack of probable cause element to be sufficiently pleaded.

As to malice, "[a] lack of probable cause generally creates an inference of malice." *Id.* at 163 (2d Cir. 2010) (quoting *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)).  Malice might be inferred from the pressure Calabrese directed toward Mayhew, and his actions during Plaintiff's interrogation.  Malice may be shown "by proving that the prosecution complained of was undertaken . . . in reckless disregard of the rights of the plaintiff."  *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (internal quotation marks omitted).  Again, Court finds that the alleged facts suffice as to this final element of Plaintiff's malicious prosecution claim at the pleading stage.  In a similar vein, these allegations suffice to plausibly allege that Calabrese was involved in the fabrication of a false confession in violation of Plaintiff's constitutional right to a fair trial.  *See Ricciuti*, 124 F.3d at 129.

### c.   Detention Without Probable Cause (Count Four)

Under *Manuel*, any "pretrial legal process—a grand jury indictment or preliminary examination" that is tainted by fabricated evidence fails to provide probable cause for the detention.  137 S.Ct. at 920 n.8.  With the exception of certain circumstances not relevant here, "the Fourth Amendment regulates conduct rather than thoughts" and "is predominantly an objective inquiry."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 736, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (internal citations omitted).  Accordingly, a claim for pretrial detention without probable cause does not include the element of malice.  As the Court has already determined that Plaintiff has adequately pleaded a lack of probable cause, this claim is also sufficiently pleaded.

17

### d. Qualified Immunity

The Westchester Defendants contend that Defendant Calabrese is entitled to qualified immunity.  The doctrine of qualified immunity gives "officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct."  *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted).  To determine whether qualified immunity applies, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was "objectively reasonable" for the defendant to believe the conduct at issue was lawful.  *See id.* at 231; *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013).

In this Circuit, "a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment."  *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012).  "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) and quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).  "[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat

the immunity defense." *Id.* Thus, the qualified immunity defense is "typically addressed at the summary judgment stage," because it "usually depends on the facts of the case, . . . making dismissal at the pleading stage inappropriate." *Woods v. Goord*, No. 01-CV-3255, 2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002) (citing *King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999)).

Each of the constitutional rights at issue here were clearly established:

- Right Against Self-Incrimination: "It was . . . clearly established in 1989 that police could not lawfully coerce incriminating statements from an in-custody criminal suspect." *Weaver*, 40 F.3d 533–34.

- Freedom from Malicious Prosecution: "[F]reedom from malicious prosecution is a constitutional right that has long been clearly established." *Manganiello*, 612 F.3d at 164 (quoting *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003).

- Right to a Fair Trial: "Qualified immunity is unavailable where, as here, the action violates an accused's clearly established constitutional rights [to a fair trial], and no reasonably competent police officer could believe otherwise." *Ricciuti*, 124 F.3d at 130. "[N]umerous federal courts throughout the nation have allowed fabrication claims to proceed against any government official—not just investigating officers—who fabricate evidence and forward it to the prosecution." *See DiPippo v. Cty. of Putnam*, No. 17-CV-7948 (NSR), 2019 WL 1004152, at *18 (S.D.N.Y. Feb. 28, 2019) (collecting cases).

- Detention Without Probable Cause: "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

Although "defendants are still entitled to qualified immunity if it was objectively reasonable for them to believe their actions were lawful," the Amended Complaint specifically alleges that the actions in question were objectively unreasonable. *Weaver*, 40 F.3d at 537. (FAC ¶¶ 145, 156, 172, 177.) Accordingly, Calabrese's qualified immunity defense must be rejected at this stage. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (noting on a 12(b)(6) motion, "the facts supporting the [qualified immunity] defense [must] appear on the face of the complaint.").

19

### e. *Monell* Liability (Count Six)

The Amended Complaint references Westchester County once at the conclusion of the *Monell* count.  (FAC ¶ 214 ("[F]or substantially causing the above-described violations of Days' constitutional rights set forth in the First through Fifth Causes of Actions, the Defendants Town of Eastchester and County of Westchester are liable to Days pursuant to 42 U.S.C. § 1983 for damages."))  In his opposition briefing, Plaintiff clarifies that he does not allege any claim under 42 U.S.C. § 1983 against the County of Westchester.  (*See* Memorandum of Law in Opposition to the County Defendants' Motion to Dismiss, ECF No. 69, at 19.)  This count is therefore dismissed as to the County of Westchester.

### f. State Law Claims

Plaintiff alleges state law claims for malicious prosecution; negligent hiring, training, supervision, retention, and discipline; and violations of the New York State Constitution.  (FAC 215-230.)  The Westchester Defendants argued that the Court should decline to exercise supplemental jurisdiction over those claims in the event the Court grants the Westchester Defendants' motion to dismiss.  (*See* Westchester Defs. Mem. at 14.)  Because federal claims remain, the Court may retain jurisdiction over these state law claims.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 533, 139 L. Ed. 2d 525 (1997) (outlining district court's discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367).  The Court therefore declines to dismiss these claims.

### g. Punitive Damages

"Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  The Westchester Defendants argue that Plaintiff has not established a claim against them for punitive damages.  This argument is correct as a matter of law as to the Defendant Westchester County,[4] but premature as to Defendant Calabrese.  First, Plaintiff has alleged that Calabrese acted recklessly and with deliberate indifference. (*See, e.g.*, FAC ¶¶ 30, 143, 154, 166, 170, 233.)  Second, the determination of appropriate punitive damages should be made on a full record, i.e., at summary judgment or trial, not on the pleadings.  *See Dixie v. Antonacci*, No. 516CV1221FJSTWD, 2017 WL 2275017, at *11 (N.D.N.Y. May 24, 2017) (citing *Parrott v. Krasicky*, No. 3:12CV820, 2013 WL 3338570, *5 (D. Conn. July 2, 2013)); *BaRoss on behalf of BaRoss v. Greenlawn Volunteer Fire Dep't, Inc.*, No. 16CV04805ADSSIL, 2017 WL 2124424, at *7 (E.D.N.Y. May 16, 2017).  Thus, the Court will not foreclose the possibility of punitive damages against Calabrese at this early stage.

### CONCLUSION

For the foregoing reasons, the Westchester Defendants' motion to dismiss is GRANTED in part and DENIED in part, and the Eastchester Defendants' motion to dismiss is DENIED. Plaintiff's § 1983 claim against Defendant County of Westchester and claim for punitive

---

[4] It is well established that punitive damages are not permitted against a municipality.  *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 271 (1981).

damages against Defendant County of Westchester are dismissed with prejudice.  All other claims remain.

The Westchester Defendants are directed to file an answer to the Amended Complaint on or before November 9, 2020.  The parties are directed to notify Magistrate Judge Smith of this opinion.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 65 and 103.

Dated: September 9, 2020                                    SO ORDERED:
          White Plains, New York

                                                    _____
                                                           NELSON S. ROMÁN
                                                    United States District Judge