

Rob Rickner | rob@ricknerpllc.com

May 21, 2021

**Via ECF**

The Honorable Andrew E. Krause
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *Days v. Town of Eastchester, et al.*, 18-CV-11538 (NSR) (AEK)

Dear Judge Krause,

We, along with Glenn A. Garber, P.C., represent Plaintiff Selwyn Days in this wrongful conviction action and submit this letter as directed by the Court at the May 13, 2021 Conference.

**Mediation and Scheduling**

The parties jointly request a settlement conference with Your Honor. It is requested that we address scheduling and Your Honor's settlement conference practices at the June 3, 2021 status conference. It is also proposed that a brief pause be placed on expert discovery with resumption two weeks after the settlement conference if a resolution is not reached.

Moreover, as to expert discovery the parties jointly request breaking it up and frontloading the confession experts that Plaintiff's counsel believe are most relevant to potential summary judgment motions -- Drs. Richard Leo, Jessica Pearson, Michael Welner, and Juliana Beth Reiss.

**The Missing Audio Tape**

Plaintiff spoke to his mother during or after the interrogation on a recorded telephone line at the Mount Vernon Police Department. But a tape of the call and notes of it are missing.

Like Defendants, Plaintiffs are very interested in the missing audio cassette and notes. When the then Assistant District Attorney, Robert Prisco, tried the case, the first trial resulted in a hung jury and the second resulted in a conviction. The audio tape, which Prisco recently testified allegedly contains an admission by the Plaintiff, was never introduced at either trial, or at any of the other three. Plaintiff contends and contended throughout the criminal trials that the tape contains an exculpation, not an admission. If what Prisco says now is true, it is remarkable that he did not use it at the first two trials. Further, the audio tape is not on the list of *Brady* / *Rosario* disclosures from any of the trials and there is no record that he ever turned it over to defense counsel at the time – assigned counsel Leonard Buddington and then retained counsel Christopher Chan. And Prisco states inexplicably that the tape and notes were lost by the District Attorney's Office. Notably, none of Plaintiff's criminal counsel from the last three trials, The

Exoneration Initiative and Paul, Weiss, Rifkind, Wharton & Garrison LLP, have ever seen or heard this audio tape or the notes. Of course, Plaintiff cannot produce what he and his counsel do not have in their possession, custody, or control. If they had the items, they would have been disclosed them long ago.

Under the circumstances, it appears that Prisco's recollection from 20 years ago is not accurate (he testified at his deposition that he "believes" he turned over the tape to Chan). Plaintiff should be allowed to seek the tape and notes from the District Attorney's Office and evidence of its purported loss. Certainly, any inference that defense counsel destroyed the audio tape is not only false, it makes no sense. Chan had every reason to believe that the Assistant District Attorney had the audio tape, and that destroying it would only make trial more difficult, as he would not have a copy of his own to prepare.

Consequently, Plaintiff agrees that an extension of fact discovery to address this issue is warranted. We do, however, have a partial disagreement as to the scope of this discovery. Plaintiff's former counsel, Chan, can testify to non-privileged facts, like whether he got the audio tape and listen to it, and what happened to it. Any deposition into other issues, like trial strategy, would still be privileged and any deposition should be strictly limited to the issues raised in this and the Defendants' letters.

Further, Plaintiff believes that further investigation into the files of the Westchester County District Attorney's Office is warranted. On May 19, 2021, we served the attached subpoenas. The first demands the audio tape and any related documents, and the second demands a witness who can testify as to the search for these documents and the existence or non-existence of what is found. Counsel for Westchester County will not be representing the District Attorney's Office, so we do not yet know if that Office will object to the search, production, and witness.

**The Deposition of Robert Adamo**

Plaintiff served subpoenas on five Westchester County employees, both current and former. Westchester objected, we met and conferred several times, and we tried to stipulate to simply accept their prior trial testimony in place of the depositions. Eastchester, however, would not agree. And because Eastchester was not a party to the criminal proceeding, Plaintiff cannot use the testimony at trial under a hearsay exception.

Westchester then moved to quash the subpoenas, Plaintiff opposed, and on November 18, 2020, the motion to quash was denied. Plaintiff agreed, however, that to the extent that enough testimony is obtained during the initial depositions, Plaintiff would reevaluate and determine whether the number of witnesses could be limited.

Plaintiff took two depositions, decided not to do one, and agreed with the Defendants that one witness, the medical examiner, should be taken as part of expert discovery, given the nature of the testimony. The last, Robert Adamo, Plaintiff still wants to depose. Westchester objected, repeatedly, and asked for some alternative. Plaintiff, in the interest of cooperation, suggested Requests for Admission that would mimic the trial transcript. Eastchester, however, did not admit them, and that leaves Plaintiff with the same problem he had initially: the evidence from Adamo

would not be admissible against Eastchester. Perhaps Plaintiff should have realized that this would happen. But in early May shortly after the conference when the RFA proposal was agreed to and it became clear that Eastchester responses would raise the problem we now face, Plaintiff urged alternatives such as a stipulation by Eastchester or deposition by written questions well in advance of the RFA response. At that point, Eastchester did not acquiesce but did not indicate that this procedure was doomed to fail either.

We reviewed the Admissions. Eastchester admitted a small number of things, but not enough to substitute for even a limited deposition. As Plaintiff sees it, we tried to accommodate Westchester's employees, and indeed did the same amount of work as a deposition by preparing detailed questions, but it simply did not work. So, Plaintiff is returning to his initial position. We want Adamo to appear at a deposition, as we initially requested and this Court Ordered, and ask the Court to allow it even though fact discovery has closed.

**The *Touhy* Request**

Plaintiff sought testimony from two Federal Bureau of Investigations witnesses. In the 1990s, Westchester and Eastchester did not have the technicians to handle certain kinds of forensic evidence. So the FBI stepped in to analyze, among other things, a hair that was found at the crime scene and some tape the true killers used to restrain one of the victims. These witnesses testified at trial, and Plaintiff believes their testimony was beneficial to his case, because key forensic evidence excludes him. These witnesses are also necessary because some of this evidence has been lost. Plaintiff cannot test it through his own experts, and Plaintiff believes this evidence may have been spoliated by Eastchester, so the chain of custody is also important.

The FBI, through counsel at the Southern District United States Attorney's Office, produced documents but objected to these witnesses testifying, given their past testimony at trial. Plaintiff, however, cannot use their testimony in the criminal cases in this civil action for the same reason we cannot use Adamo's testimony. We attempted the same workaround, and asked Defendants to stipulate to using the criminal testimony in place of the deposition at trial, but Defendants refused. Plaintiff met and conferred with the AUSA assigned, and after considerable negotiations, the AUSA's position is that Plaintiff can only ask 15 questions, by written deposition, for each witness. It is simply not enough. So Plaintiff will move to compel these depositions, and asks the Court to set a brisk briefing schedule, such as seven days to move and seven days for the FBI to oppose.

We appreciate the Court's consideration of these matters.

Respectfully,

/s/

Rob Rickner

cc:

All Parties by ECF

The issues raised in the parties' letters (ECF Nos. 166, 168, and 170) will be addressed in further detail at the June 3, 2021 telephonic status conference. Regarding the *Touhy* request for testimony from FBI witnesses (see ECF No. 168 at 3, ECF No. 170 at 3), the U.S. Attorney's Office for the Southern District of New York is directed to submit a short statement, not to exceed three pages, of the DOJ's position regarding the *Touhy* request on or before June 1, 2021.

Counsel for Plaintiff is directed to send a copy of this order to the AUSA with whom they have been in contact regarding the *Touhy* request. The Court will also send a copy of this order to the AUSA who has previously communicated with the Court regarding this matter (see ECF No. 152).

The U.S. Attorney's Office is hereby advised that the *Touhy* issue will be addressed at the June 3, 2021 conference; the appropriate AUSA should attend that conference and participate in at least that portion of the conference where the *Touhy* issue is discussed. Plaintiff's counsel has requested that the Court set a "brisk briefing schedule" for a motion to compel the testimony of the FBI witnesses; if necessary, a schedule will be set at the June 3 conference.

Dated: May 26, 2021

SO ORDERED.

_____
ANDREW E. KRAUSE
United States Magistrate Judge