USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SELWYN DAYS,

           Plaintiff,

v.

THE COUNTY OF WESTCHESTER and
CHRISTOPHER CALABRESE,

           Defendants.

7:18-CV-11538 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Selwyn Days (the "Plaintiff") brings this action under 42 U.S.C. § 1983, asserting violations of his Constitutional rights stemming from a purportedly false confession that he gave related to a double homicide that occurred in Westchester County in 1996. Plaintiff now sues the County of Westchester and Officer Christopher Calabrese (the "Defendants") for these Constitutional violations.

Presently before the Court is Defendants' motion for summary judgment (the "Motion"). (ECF No. 287.) Defendants seek summary judgment on Plaintiff's claims of: (1) failure to intervene in Plaintiff's coerced confession in violation of Plaintiff's Fifth Amendment rights; (2) fabrication of evidence in violation of Plaintiff's Fair Trial and Due Process rights; (3) malicious prosecution; (4) pre-trial detention without probable cause in violation of *Manuel*; and (5) violations of the New York State Constitution. For the following reasons, the Court DENIES Defendants' motion for summary judgment in part and GRANTS Defendants' motion for summary judgment in part.

**PROCEDURAL BACKGROUND**

On December 11, 2018, Plaintiff commenced this action against the Eastchester Police Department, the Town of Eastchester, Eastchester Police Officer Astarita, Eastchester Police Officer Barletta, Eastchester Police Officer Kiernan, the County of Westchester, and Westchester County Department of Public Safety Officer Calabrese. (ECF No. 1.) On May 10, 2019, Plaintiff amended the Complaint. (ECF No. 52.) The Amended Complaint is the operative Complaint. On September 9, 2020, the Court granted in part and denied in part the Defendants' motion to dismiss and denied the Eastchester Defendants' motion to dismiss. (ECF No. 122.) On January 7, 2022, Plaintiff settled his claims with the Eastchester Police Department officers and the Town of Eastchester. By stipulation dated February 8, 2022, Plaintiff agreed to dismiss all claims against the Eastchester Defendants, as well as all claims against the Westchester Defendants, except for those claims predicated upon "intentional wrongs or reckless conduct." (ECF No. 210.) The only remaining defendants are now Westchester County and Officer Calabrese.

On September 5, 2024, Defendants filed their motion for summary judgment. (ECF No. 287.) Defendants also filed their Memorandum of Law in Support ("MoL.") and Reply Memorandum of Law (the "Reply") on the same day. (ECF Nos. 292-93.) Plaintiff then filed his Memorandum of Law in Opposition (the "Opp."). (ECF No. 297.) On September 5, 2024, Defendants filed their Local Rule 56.1 statement of material facts ("Def.'s 56.1"). (ECF No. 288.) On the same day, Plaintiff filed his counterstatement to Def.'s 56.1 ("Pltf.'s 56.1"). (ECF No. 298.) On September 20, 2024, Plaintiff also filed a letter to the Court that Plaintiff sought to serve as a Surreply. (ECF. No. 301.)

**BACKGROUND**

On November 21, 1996, the bodies of Archie Harris and his home health aide, Betty Ramcharan, were found in Harris's home in Eastchester, New York. (Def.'s 56.1 ¶ 1.) Officers from Eastchester Police Department ("EPD") responded to the scene and soon after requested assistance from the Westchester County Department of Public Safety. (*Id*. at 2.) Officer Calabrese and a detective, John Doyle, were assigned to assist. (*Id*. at 3.) On February 15, 2001, Captain Terrance Raynor of the Mount Vernon Police Department ("MVPD") informed EPD that MVPD had arrested Plaintiff for violating an order of protection. (*Id*. at 6.) Sometime after, MVPD received an anonymous call related to the Harris-Ramcharan murder. (*Id*. at 8.) The content of the anonymous call was that "Selwyn Days killed two people in Eastchester." (*Id*. at 10.) Calabrese was tasked with identifying the anonymous caller. (*Id*. at 11.) Calabrese was advised that the caller seemed to be a black female in her 30s or 40s. (*Id*. at 12.) Calabrese suspected that the caller was Plaintiff's ex-girlfriend, Cherlyn Mayhew, who fit that description and was the protected party on the order of protection that Plaintiff violated. (*Id*.) Calabrese then went to Mayhew's residence, and after some discussion, Mayhew drove to the precinct to talk to Calabrese. (*Id*. at 16.) Upon arrival at the precinct, Mayhew was interviewed by Calabrese and Doyle in a smaller secondary interview room. (*Id*. at 18.) At the same time, Plaintiff was being interviewed in a larger interview room, which was the primary interview room in the precinct. (*Id*.) During Mayhew's questioning, she eventually admitted to being the person who placed the anonymous call that implicated Plaintiff in the Harris-Ramcharan murders. (*Id*. at 21.) Mayhew further disclosed that Plaintiff had told her that it was related to "some type of a problem with his mother, and that he had killed them, meaning two people, with knives." (*Id*.)

3

This is where the parties diverge. From this point on, the parties have wildly different accounts of the events that followed. Plaintiff says that he was able to see and hear Mayhew from the primary interview room where he was being held. (Pltf.'s 56.1 ¶ 18b.) Plaintiff contends that Mayhew was coached to give her statement that he had any involvement with the Harris-Ramcharan murders. Plaintiff represents that "Mayhew was pressured by the detectives at the precinct to stick with what she said on the phone call." (Pltf.'s 56.1 ¶ 21a.) As Plaintiff tells it, "[t]hey were telling [Mayhew], 'we need you to tell it the way we found it.'" (*Id*.) And Mayhew replied, "I don't want to get involved. I don't want to do that." (*Id*.) Plaintiff asserts that it was only after repeated coaching that Mayhew relented and gave the statement that Plaintiff was responsible for the murders. (*Id*.) Defendants, on the other hand, do acknowledge that Mayhew initially denied making the call but that it was due to her fear of Plaintiff. (Def.'s 56.1 ¶ 20.) Calabrese describes Mayhew as visibly shaken and that she threw up into a garbage can because she was afraid that Plaintiff would kill her if she spoke to the police. (*Id*.) Defendants deny any coaching or pressuring of Mayhew and Defendants maintain that Mayhew eventually voluntarily confirmed that she had made the call, and that Plaintiff had told her about his involvement in the murders. (*Id*.)

The parties also offer wildly different accounts of how Plaintiff's interview unfolded. Defendants maintain that nothing occurred that violated Plaintiff's civil rights and that the interview was "a conversation, nonconfrontational." (*Id*. ¶¶ 50, 52.) Defendants describe Plaintiff as speaking openly, voluntarily, and even answering in narrative form in response to open-ended questions. (*Id*. ¶ 51.) More specifically, Defendants deny any use of threats, force, or offers of inducement or leniency. (*Id*. ¶¶ 55-57.) Meanwhile, Plaintiff asserts just the opposite. Plaintiff represents that he was force-fed facts related to the murder and that the police made him rehearse

4

these facts before recording his confession. (Pltf.'s 56.1 ¶¶ 46a-50a.) To get Plaintiff to comply, one of the EPD officers, Detective Kiernan, slapped Plaintiff and threatened to have Plaintiff's family "disappear."[1] (*Id*. ¶ 39a.) It was only then that Plaintiff began to repeat the officers' narrative that he was the one responsible for the Harris-Ramcharan murders, which is what was ultimately captured on video. (*Id*. ¶ 58a.)

As mentioned, Officer Calabrese was responsible for interviewing Mayhew. (Def.'s 56.1 ¶ 16.) Mayhew's interview concluded at around 12:15 a.m., and Officer Calabrese then began observing Plaintiff's interview in a separate monitoring room that provided a real-time video link of Plaintiff's interview. (*Id*. at 37.) The parties dispute the exact timing of when Calabrese began viewing the interview session but by all accounts, Calabrese began viewing the interview anywhere between 12:30-1:30 a.m. (*Id*. ¶ 38.); (Pltf.'s 56.1 ¶ 39a.) Officer Calabrese was also the one responsible for recording the confession and was to record only when Plaintiff began to speak about the murders. (Def.'s 56.1 ¶ 36.) At 1:42 a.m., Officer Calabrese started to record the interview. (*Id*. ¶ 44.) The recorded confession captures Plaintiff inculpating himself in the murders and disclosing details of how the murders were committed. (*Id*. ¶¶ 46-48.) After Plaintiff's confession, EPD determined that they had probable cause to arrest him. (*Id*. ¶ 66.)

Calabrese conveyed all relevant information that he had related to the investigation to both EPD and the Westchester County District Attorney's Office. (*Id*. ¶ 69.) With that information, among other information and evidence, the Westchester County District Attorney's Office convened a grand jury and secured an indictment against Plaintiff. (*Id*. ¶ 71.)

---

[1] In his opposition papers, Plaintiff initially identified the officer who slapped him as Detective Barletta. In Plaintiff's Surreply, he concedes that the officer who slapped him was Detective Kiernan and not Detective Barletta.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). To prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original). At the summary judgment stage, "it is undoubtedly the duty of district courts not to weigh the credibility of the parties." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005). A court

may rely on a Plaintiff's testimony alone to raise an issue of material fact during summary judgment so long as the "testimony was not contradictory or rife with inconsistencies such that it was facially implausible." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010).

## DISCUSSION

**Fifth Amendment Violation**

Plaintiff alleges that officers from EPD coerced his confession, and that Officer Calabrese failed to intervene to protect his constitutional rights. An officer can be liable for failure to intervene when he observes the violation of a citizen's constitutional rights and (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988). But "there can be no failure to intervene claim without a primary constitutional violation." *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) (internal quotation marks omitted). Here, the primary constitutional violation would be the alleged coerced confession. Coercion is determined by the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Factors to consider include "youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Id.* (cleaned up). "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." *U.S. v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991) (citing *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)).

Here, Plaintiff had been detained for fourteen hours and was questioned by police for seven of them. (Pltf.'s 56.1 ¶ P2.) Moreover, viewing the facts in the most favorable light to Plaintiff, as the Court must at this stage, there are open questions to Plaintiff's level of intelligence. (*Id.* ¶ 62a.) Plaintiff also notes that he has a history of struggling academically and dropped out of community college. (*Id.*) Most pressing, Plaintiff alleges that he was slapped by Detective Kiernan and that threats were made against his family. Courts have held that this sort of conduct by law enforcement agents could qualify as coercion and that disputes of facts surrounding this conduct are sufficient to preclude summary judgment. *See Edwards v. Pretsch*, 180 F. Supp. 2d 499, 506 (S.D.N.Y. 2002) (holding that Plaintiff's allegations that she was interrogated for five hours, was verbally harassed, was not allowed to take a break to smoke a cigarette, and that she was threatened that if she did not confess, her three-year-old son could be taken from her care was sufficient to preclude summary judgment); *Jackson v. Nassau Cnty.*, No. 18-CV-3007(JS)(AYS), 2024 WL 4252047, at *12 (E.D.N.Y. Sept. 20, 2024) (finding that an officer striking a detainee in the face if he did not confess during a prolonged interview could qualify as coercion and was sufficient to preclude summary judgment). Accordingly, viewing the facts in the light most favorable to Plaintiff, Plaintiff could have suffered a primary constitutional violation by being coerced into falsely confessing to a crime that he did not commit.

Now that the Plaintiff has established that there is enough to sustain a primary violation in his coercion claim, the remaining question is whether Officer Calabrese failed to intervene. What plagues this case is that the facts surrounding Plaintiff's confession remain hotly contested and open questions remain at this stage due to the lack of object evidence to resolve the dispute in one side's favor. The Court is left with two vastly different accounts of what occurred. On one side, a seemingly routine police interview that resulted in a confession. And on the other, a

grueling hours-long interrogation that resulted in violence and threats against innocent members of Plaintiff's family. It is unclear to the Court what Officer Calabrese saw, and what transpired during Plaintiff's interview, because there is anywhere from twelve minutes to one hour of the confession that Calabrese viewed but did not record. It is very possible that during that window of time Officer Calabrese saw Detective Kiernan strike and threaten Plaintiff. Or perhaps not. But at this stage, the Court only has the say-so of law enforcement on one side and the Plaintiff on the other. This is precisely the sort of factual determination that is inappropriate for resolution on a motion for summary judgment. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (concluding that "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."). And as mentioned, Plaintiff's testimony is sufficient to raise an issue of material fact. See *Fincher*, 604 F.3d at 726. Accordingly, there is enough of a material factual dispute between the parties that the Court denies summary judgment on Plaintiff's claim of failure to intervene related to his allegedly coerced confession.

**Fabrication of Evidence**

Plaintiff alleges that Calabrese fabricated evidence in the form of police reports documenting his allegedly false confession that were then sent to the Westchester County District Attorney's Office. Plaintiff maintains that his confession was false and coerced, and that Calabrese knew that it was false and coerced. Plaintiff alleges that Calabrese omitted these facts from his police reports and represented that the confession was voluntary to the prosecutors who then used this information to secure an indictment against him. Plaintiff also accuses Calabrese of being one of the officers who coached Mayhew into falsely implicating him in the murders.

To establish a fabricated evidence claim, a plaintiff must show that "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under [Section] 1983." *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 452 (S.D.N.Y. 2012) (alteration in original). Moreover, material omissions of fact can render a statement false. *See Morse v. Fusto*, 804 F.3d 538, 549 (2d Cir. 2015).

Here, Plaintiff offers two bases for his fabrication of evidence claim: (1) Calabrese submitted police reports that omitted that Plaintiff's confession was coerced and (2) Calabrese coached Mayhew's statement implicating him in the murders. First, viewing the facts in the most favorable light to Plaintiff, Calabrese could very well have been present during Plaintiff's purported coercion. Particularly so because, as Defendants admit, Calabrese was instructed to start the tape once Plaintiff began discussing the murders. As Plaintiff tells it, he was slapped and his family was threatened, and only then did he capitulate and begin to regurgitate the officers' narrative that he was responsible for the Harris-Ramcharan murders. As a result, a jury could find that Calabrese witnessed the slap and threat. Calabrese's notes, testimony, and disclosures to the Westchester County District Attorney's Office omitting that portion of the interview and portraying Plaintiff's confession as voluntary would have then been false. Moreover, there can be little doubt that Plaintiff's confession likely did influence the jury in finding Plaintiff guilty, which led him to serve 16 years in prison. Accordingly, given the facts as presented and viewing

them in the light most favorable to Plaintiff, there is enough to sustain a claim of fabrication of evidence sufficient to survive a motion for summary judgment for the submission of false police reports. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (finding that a reasonable jury could find that defendants violated the plaintiffs' clearly established constitutional rights by conspiring to fabricate and forward to prosecutors a known false confession almost certain to influence a jury's verdict."); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (concluding that summary judgment was inappropriate where plaintiff testified that the statement written by defendant was false, and defendant testified that the statement was verbatim and accurate because a reasonable jury could credit plaintiff's version over defendant's).

Second, Plaintiff's reliance on Mayhew's allegedly coerced statement as the basis for a claim of fabrication of evidence is based on inadmissible hearsay. Plaintiff claims that he heard the police tell Mayhew "we need you to tell it the way we found it." (Pltf.'s 56.1 ¶ 21a.) And that Mayhew replied, "I don't want to get involved. I don't want to do that." (*Id.*)  This is inadmissible hearsay and cannot provide the basis for a genuine dispute of material fact on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c). Accordingly, Plaintiff's claim for fabrication of evidence can proceed on the basis of false police reports but cannot proceed on the basis of Mayhew's allegedly coerced statement.

### *Brady* Violation

Plaintiff also alleges that Calabrese's failure to include the details of his coerced confession amounted to a *Brady* violation. A *Brady* violation occurs when a defendant's right to a fair trial is violated through the failure to disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 83 (1963). Police officers also "can be held liable for Brady due process

11

violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015). "A classic Brady violation contains three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Fappiano v. City of New York*, 640 Fed. Appx. 115, 118 (2d Cir. 2016) (summary order) (quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)).

Here, Plaintiff claims that Calabrese violated *Brady* by failing to disclose that Plaintiff's confession was false. This claim, however, is duplicative of his fabrication of evidence claim. Courts in the Second Circuit have typically viewed these types of claims—submission of false police reports—as only redressable under a fabrication claim and have not allowed a belt and suspenders approach in alleging both a fabrication claim and a *Brady* violation. *See Myers v. Cnty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011) (concluding that a police officer's disclosure of fabricated evidence is redressed as a deprivation of liberty on the basis of false and fabricated evidence, not under *Brady*); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 628 (E.D.N.Y. 2017) (same). Accordingly, the Court will grant summary judgment on Plaintiff's *Brady* violation claim.

### **Malicious Prosecution**

Plaintiff also alleges that Calabrese maliciously prosecuted him by initiating criminal proceedings against him in falsifying reports and forwarded them to the prosecution team. A malicious prosecution claim requires: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."

12

*Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). "A defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury." *Deskovic*, 894 F. Supp. 2d at 456. Moreover, though probable cause is considered a complete defense to a claim of malicious prosecution, and indictment by a grand jury creates a presumption of probable cause, that presumption may be rebutted if the indictment was procured through fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith. *See Manganiello*, 612 F.3d at 162. And importantly, the standard for probable cause in the malicious prosecution context is different than the probable cause needed for an arrest. In the malicious prosecution context, probable cause only exists if there is probable cause for the officer to believe the prosecution could succeed. *See Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

First, Calabrese initiated the prosecution when he forwarded police reports containing allegedly false information related to Plaintiff's confession. These reports undoubtedly influenced the prosecutor's decision to pursue charges against Plaintiff. Defendants fault Plaintiff for not citing which reports influenced the prosecutors or grand jury, but the Court is not aware, and Defendants do not provide, caselaw that requires that level of precision in identifying which reports influenced the prosecutor. The law only requires that a defendant knowingly provided false information or fabricated evidence that would *likely* influence a prosecutor or grand jury. *See Buari*, 530 F. Supp. 3d at 385 ("Precedent is clear that police officers who induce a witness to give false testimony that results in an arrest and grand jury indictment have 'initiated' a criminal proceeding."). Calabrese testified that he gave over all relevant information to prosecutors, which would have included his notes that omit any mention of coercion (Def.'s 56.1 ¶¶ 69,71) (noting that Calabrese turned over all relevant information to the prosecutors who then

13

secured an indictment from the grand jury). Accordingly, Plaintiff has satisfied the first prong of a malicious prosecution claim.

Second, there is no question that the underlying criminal proceedings were terminated in Plaintiff's favor. *See Anilao v. Spota*, 774 F. Supp. 2d 457, 507 (E.D.N.Y. 2011), *aff'd*, 27 F.4th 855 (2d Cir. 2022) (noting that the "law does not require a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence . . . [the] burden is to demonstrate a final termination that is not inconsistent with innocence.") In September 2017, Plaintiff was acquitted at his fifth trial and the indictment was dismissed. (Def.'s 56.1 ¶ 77.) Accordingly, Plaintiff has satisfied the second prong of a malicious prosecution claim.

Third, Plaintiff must show that there was a lack of probable cause for his arrest. Defendants argue that there was sufficient probable cause and that this is a complete defense to a malicious prosecution. Defendants further argue that the grand jury's indictment creates a presumption of probable cause. Quite right. But this presumption can be overcome when there is some indication that an officer lied or provided false information to secure the indictment. *See Manganiello*, 612 F.3d at 162 ("Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment, and a jury could reasonably find that the indictment was secured through bad faith or perjury, the presumption of probable cause created by the indictment may be overcome."). This is precisely what Plaintiff alleges happened. Plaintiff alleges that the officers coerced his confession and then lied to prosecutors and juries that the confession was voluntary when it was anything but to secure an indictment against Plaintiff. Moreover, Defendants only determined that there was probable cause to arrest Plaintiff following his allegedly coerced

14

confession, and absent the confession, there was only the word of Mayhew to implicate Plaintiff. As a result, there was little else that could have provided probable cause that a prosecution would have succeeded against Plaintiff. The problem for Plaintiff is that the law in this Circuit requires more than just the plaintiff's version of events to rebut probable cause. *See Boyd*, 336 F.3d 72 (requiring independent corroboration or "competing testimony plus" to show that the indictment was procured through some sort of misconduct). "A court must determine whether the plus factors move the competing version of events 'beyond a simple conflict of stories or mistaken memories and into the possibility that [the police officer] ... lied in order to secure an indictment.'" *Townsend v. City of New York*, No. 19CV10944LAKRWL, 2022 WL 1446532, at *4 (S.D.N.Y. Apr. 20, 2022) (quoting *Brandon v. City Of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)). Neither of the parties briefed this issue but the Court is satisfied that Plaintiff meets this burden. In *Garnett v. City of New York*, the court found that plaintiff's testimony alone would be insufficient to rebut the presumption of probable cause but that his account of events was partially corroborated by a witness who testified that plaintiff never entered the store, never made any statements, and was not involved in the drug transaction. No. 13-CV-7083 (GHW), 2014 WL 3950904, at *10 (S.D.N.Y. Aug. 13, 2014). Here, Plaintiff has an alibi witness who can confirm that Plaintiff was not in New York at the time of the murders but in North Carolina. (Pltf.'s 56.1 ¶ P18.) Moreover, Plaintiff was excluded from over 50 DNA samples recovered from the murder scene. (*Id*. ¶ P17.) It would reasonably follow that, given these circumstances, Plaintiff would only confess to a crime that he did not commit under police coercion. Accordingly, a jury could find that there was a lack of probable cause for his prosecution.

And finally, lack of probable cause supports a finding of actual malice. *See Boyd*, 336 F.3d at 78. ("Once we find an issue of material fact as to probable cause, the element of malice

also becomes an issue of material fact as well."). Accordingly, there is a genuine dispute of material fact related to actual malice. And following that finding, Plaintiff has presented a genuine dispute of material fact on his malicious prosecution claim as a whole.

### *Manuel* Claim

Plaintiff also brings a claim related to his pre-trial detention under *Manuel v. Joliet*, 580 U.S. 357, 360 (2017). Plaintiff claims that there was lack of probable cause for him to be detained pre-trial. Defendant argues the opposite. As noted *supra*, there is enough that a jury could find that there was a lack of probable cause such that the Plaintiff could bring a *Manuel* claim.

### New York State Claims and *Respondeat Superior*

Plaintiff also brings claims under the New York Constitution for the purpose of holding Westchester County (the "County") responsible under a theory of *respondeat superior* for Defendants' due process violations. Relief would not otherwise be available against the County because Section 1983 does not provide for municipal liability under a theory of *respondeat superior*. Defendants make two arguments in response. First, that Plaintiff cannot make a claim against the County because he cannot maintain a primary violation against Calabrese. As a result, any claim against the County based on a theory of *respondeat superior* would fail. Second, Defendants argue that Plaintiff's New York State claims must be dismissed because he has failed to articulate any violation of the New York Constitution that is distinct from his federal constitutional claims. Defendants cite *Maldonado v. City of New York*, No. 11 CIV. 3514 RA, 2014 WL 787814 (S.D.N.Y. Feb. 26, 2014) in support.

As discussed *supra*, Plaintiff has maintained a primary violation against Calabrese, and as such, can also maintain a claim against the County under a theory of *respondeat superior*. As to

Defendants' second argument, *Maldonado* is inapposite. In *Maldonado*, there was perfect overlap between the federal and state constitutional violations alleged and the basis for bringing those claims. But here, there is a distinct theory of liability underlying the state claims than the federal claims—namely, *respondeat superior*. Courts in this Circuit have allowed state claims to proceed alongside federal claims when there is a different theory of liability underlying them. *See Buari*, 530 F. Supp. 3d at 409 (allowing state constitutional claims to survive alongside identical federal claims insofar as they were seeking to hold the City liable under a theory of *respondeat superior*) (collecting cases). Accordingly, Plaintiff's claims under the New York Constitution may proceed as long as they are premised on a theory of *respondeat superior*.

**Qualified Immunity**

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law," *McClenton v. Menifee*, 05 CV 2844 (JGK), 2006 WL 2474872, at *14 (S.D.N.Y. Aug. 22, 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (internal citation and quotation marks omitted)). To determine whether a right was clearly established, the Court looks to: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 163-64 (2d Cir. 2013). If the defendant can show

that no reasonable jury, viewing the evidence in the light most favorable to the plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law, summary judgment may be granted. *See Deskovic*, 894 F. Supp. 2d at 451 (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)).

Here, Defendants raise a qualified immunity defense to each of Plaintiff's claims. This defense fails. Viewing Plaintiff's claims in the most favorable light, it would not be possible for a reasonable jury to conclude that Defendant's action were objectively reasonable. *See Ricciuti*, 124 F.3d 123 (denying qualified immunity for a claim of fabrication of evidence at the summary judgment stage to a police officer who forwarded a false confession to a prosecutor because the action violated the accused's clearly established constitutional right); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 273 (E.D.N.Y. 2000) (rejecting qualified immunity defense for a malicious prosecution claim on the basis that giving false information to a prosecutor that defendant knows will likely bring a prosecution case, knowingly violates the law and does not entitle defendant to qualified immunity for these actions); *Ricciuti*, 124 F.3d at 129 ("To obtain summary judgment on qualified immunity grounds in connection with a claim of failure to intercede to prevent an illegal arrest, a defendant must show that the only result a fair jury could reach is that reasonably competent police officers, faced with the information available to the non-intervening officer at the time of the arrest, could disagree about the legality of the arrest"); *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) (finding that no reasonable officer could have thought that falsifying the factual basis for probable cause to detain a suspect pre-trial is constitutionally permissible). Accordingly, the Court denies Defendants' motion for summary judgment on the basis of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in part and GRANTED in part. Defendants' motion for summary judgment is DENIED on Plaintiff's claims of (1) failure to intervene in Plaintiff's coerced confession in violation of Plaintiff's Fifth Amendment rights; (2) fabrication of evidence in violation of Plaintiff's Fair Trial and Due Process rights; (3) malicious prosecution; (4) pre-trial detention without probable cause in violation of *Manuel*; and (5) Plaintiff's claims under the New York State Constitution. Defendants' motion for summary judgment is GRANTED on Plaintiff's *Brady* violation claim.

The parties are directed to appear for a pretrial teleconference on September 4, 2025 at 12:15 pm. To access the Webex Teleconference, please follow these directions: (1) Dial the Meeting Number: 855-244-8681; (2) Enter the Access Code: 2310 494 3855 #; and (3) press # again to enter the teleconference. The Clerk of Court is directed to terminate the motion at ECF No. 287.

SO ORDERED.

Dated: July 9, 2025
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge